UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| REGINO ALEXIS, an individual;  )<br>KIMBERLY SEAY, an individual  )<br>　　　　Plaintiffs,  )<br>　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>CITY OF WEST PALM BEACH, FL,  )<br>a Florida Municipality;　　　　　)<br>COVELLE PADGETT, individually  )<br>　　　　Defendants.　　　　　　)<br>　　　　　　　　　　　　　　) | Case No. 9:26-cv-80118 |

## COMPLAINT

COMES NOW, Plaintiffs, REGINO ALEXIS and KIMBERLY SEAY., by and through undersigned counsel, hereby files this Complaint against the Defendants, for damages. In support thereof, Plaintiff alleges, and states as follows:

### INTRODUCTION

1. This is an action brought by Plaintiff, Regino Alexis to vindicate deprivations of his constitutional rights caused by Defendants.

2. This action is also brought by Plaintiff Kimberly Seay to address emotional distress caused by Defendants.

### JURISDICTION and VENUE

3. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,1343.

4. The Court also has supplemental jurisdiction over the remaining claims in Plaintiff's Complaint pursuant to 28 U.S.C. § 1367(a) because those claims are based on the same factual allegations and therefore comprise the same case or controversy that gives rise to the claims arising under federal law.

5. This case is instituted in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

## PARTIES

6. At all times relevant hereto, Plaintiff Regino Alexis and Kimberly Seay were residents of the State of Florida and a citizen of the United States of America.

7. At all times relevant hereto, The City of West Palm Beach, Florida ("City") is a political subdivision for the State of Florida, which operates the West Palm Beach Police Department ("WPBPD"), and was acting under the color of state law.

8. At all times relevant hereto, Defendant Covelle Padgett was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City for WPBPD. Defendant Covelle Padgett is sued individually.

## GENENERAL ALLEGATIONS

9. On Sunday, May 22, 2022, at approximately 6:07 pm, Kimberly Seay dialed 911 and contacted WPBPD dispatch. Seay called from the emergency room at "J.F.K." hospital, located at 2201 45th Street, West Palm Beach, Fl.

10. On the emergency line, Seay stated she wanted to "Baker act" her son, Reginald Alexis.

11. Seay explained that Alexis would not come into the emergency room.

12. Seay explained that she had to call the police. Seay stated that she wanted to "Baker act" Alexis because he "was talking crazy." Alexis said he wanted to die, "jump out the car," and "kill himself."

13. Shawn Gilbert, Kimberly Seay's boyfriend, also called 911. Gilbert also said that Alexis was feeling suicidal.

14. Alexis ran northbound on Congress Avenue, eastbound on Dr. Martin Luther King Blvd., and eventually entered the "Azure" apartment complex, located at 1555 Dr. Martin Luther King Blvd., in Riviera Beach, Florida.

15. Alexis then runs southbound in front of the complex's Laundry-room. Alexis then stumbles and falls, sits up, and turns his body north while still sitting down.

16. Officer Padgett approaches Alexis with his right hand extended, pointing his police department-issued TASER at Alexis.

17. Officer Padgett then reaches for his police-issued radio with his left hand.

18. Alexis has both of his hands up in a defensive manner. Alexis begins to turn his body to his right while still sitting down as Alexis starts to lift his left leg.

19. As Officer Padgett begins to walk to the left side of Alexis' body, Alexis reaches up.

20. Officer Padgett then kicks Alexis to keep him down on the ground.

21. Officer Padgett then steps back with his TASER still pointed at Alexis.

22. Alexis stands back up, prompting Officer Padgett to fire his TASER, striking Alexis on his upper torso. The TASER seems to be effective, causing Alexis to fall forward.

23. Padgett's TASER prongs disconnect from Alexis and Padgett deploys a second TASER cartridge.

24. Padgett then reaches for his police-issued handgun from his holster.

25. Alexis then runs along building "F." While doing so, Alexis passes Officer Padgett's line of fire.

26. Alexis is nearly struck with a bullet.

27. Officer Padgett fires a single gunshot. Alexis runs south down the hallway complex's southwest side, climbing over and walking southbound on AC Evans Street.

28. Alexis was later taken into custody and transported to the West Palm Beach Police Department Headquarters.

### **COUNT I. 42 U.S.C. § 1983 – Unlawful Seizure in violation of the Fourth Amendment (Excessive Force)**
***(Regino Alexis v. Covelle Padgett)***

29. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

30. 42 U.S.C. § 1983 provides that:

    Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

31. Plaintiff Alexis in this action is a citizen of the United States and Covelle Padgett is a person for purposes of 42 U.S.C. § 1983.

32. This count arises purely out of 42 U.S.C. § 1983 and the fourth amendment of the United States Constitution. State law claims of limitations and defenses under state law are not applicable to this count.

33. Covelle Padgett, at all times relevant hereto, was acting under the color of state law in his capacity as a law enforcement officer with WPBPD and his acts or omissions were conducted within the scope of his official duties or employment.

34. At the time of the complained of events, Plaintiff Alexis had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizures.

35. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

36. Defendant Covelle Padgett unlawfully seized the Plaintiff in the City of Riviera Beach, Florida without having authority to act as a law enforcement officer within the city limits of Riviera Beach, Florida.

37. Upon information and belief, the mutual aid agreement between the City of Riviera Beach, Florida and the City of West Palm Beach, Florida, does not permit WPBPD Officers to perform Baker Act seizures within the jurisdiction of Riviera Beach, Florida.

38. Defendant Covelle Padgett engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of the Plaintiff's federally protected constitutional rights.

39. The acts or omissions of Defendant Covelle Padgett was one of the moving forces behind Plaintiff's injuries.

40. The acts or omissions of Defendant Covelle Padgett, as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

41. Defendant Covelle Padgett is not entitled to qualified immunity for the complained of conduct.

42. As a proximate result of Defendant Covelle Padgett's unlawful conduct, Plaintiff Alexis has suffered actual physical injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of Defendant Covelle Padgett's unlawful conduct, Plaintiff has incurred special damages, and may continue to incur other special damages related expenses, in amounts to be established at trial.

43. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

44. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant Padgett under 42 U.S.C. § 1983, in that the actions of Defendant Padgett have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**COUNT II. Battery**
(***Regino Alexis* v. *Covelle Padgett***)

45. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

46. Defendant willfully tased Plaintiff Alexis with a taser.

47. These actions were carried out against Plaintiff's will, with no legal justification for doing so.

48. On December 18, 2025, the Plaintiff pleaded guilty for his actions described in this count.

49. As a proximate result of Defendant Covelle Padgett's unlawful conduct, Plaintiff Alexis has suffered actual physical injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of Defendant Covelle Padgett's unlawful conduct, Plaintiff has incurred special damages and may continue to incur other special damages related expenses, in amounts to be established at trial.

### COUNT III. Assault
(*Regino Alexis v. Covelle Padgett*)

50. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

51. Defendant willfully shot a firearm at Plaintiff Alexis, with the bullet nearly striking Plaintiff creating a well-founded fear of being struck by the bullet and dying.

52. These actions were carried out against Plaintiff's will, with no legal justification for doing so.

53. On December 18, 2025, the Plaintiff pleaded guilty for his actions described in this count.

54. As a proximate result of Defendant Covelle Padgett's unlawful conduct, Plaintiff Alexis has suffered actual physical injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of Defendant Covelle Padgett's unlawful conduct, Plaintiff has incurred special damages and may continue to incur other special damages related expenses, in amounts to be established at trial.

## COUNT IV. Intentional Infliction of Emotional Distress
### (*Regino Alexis v. Covelle Padgett*)

55. Plaintiff Alexis realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

56. Defendant Padgett engaged in extreme and outrageous conduct by tasing and shooting a firearm at Plaintiff Alexis while he was experiencing a mental health crisis.

57. On December 18, 2025, Defendant Padgett pleaded guilty to the conduct of tasing and shooting a firearm at Plaintiff.

58. Defendant Pagett engaged in this conduct with the specific intent to cause emotional distress to Plaintiff Alexis.

59. As a proximate result of Defendant Covelle Padgett's unlawful conduct, Plaintiff Alexis has suffered emotional distress, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of Defendant Covelle Padgett's unlawful conduct, Plaintiff has incurred special damages and may continue to incur other special damages related expenses, in amounts to be established at trial.

8

## COUNT V. Negligent Retention of an Employee
### (*Regino Alexis v. City of West Palm Beach*)

60. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

61. Notice has been given to the appropriate parties pursuant to Florida Statute §768.28 and more than six months has elapsed since notice was given to the Defendant.

62. Defendant City employed Defendant Padgett at some point prior to March 2012.

63. During the employment of Defendant Padgett prior to May 22, 2022, Defendant Padgett engaged in multiple instances of conduct unbecoming of a law enforcement officer that justified termination.

64. Further, prior to May 22, 2022, Defendant Padgett engaged in activity that put the City on notice that the actions that were committed on Plaintiff Alexis, were reasonably foreseeable.

65. On or about August 30, 2013, Defendant Padgett unlawfully entered someone's home while trying to help a recently evicted person retrieved items left behind. After forcing his way in, he engaged in a physical altercation with the resident.

66. On or about May 9, 2022, Defendant Padgett engaged in conduct that compromised an active criminal investigation of his department and affected the morale and efficiency of his department.

67. The City has a duty to protect Plaintiff and others from employees that they reasonably know may cause unlawful harm to others in the course and scope of their employment.

68. With that duty, they have the duty to retain employees that work consistent with their legal duty.

69. That on sometime prior to May 22, 2022, the City breached this duty by failing to terminate Defendant Padgett for the many instances of misconduct committed by Defendant Padgett while employed with the City.

70. As a result of the City's breach of duty in retaining Defendant Padgett, the Plaintiff suffered damages as mentioned below in the "PRAYERS FOR RELIEF" section.

**COUNT VI. Negligence Fla. Stat. §768.28 – In the alternative to claim for excessive force by Covelle Padgette Pursuant to Rule 8 of Fed. R. Civ. P. (*Regino Alexis v. City of West Palm Beach*)**

71. Plaintiff realleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

72. Notice has been given to the appropriate parties pursuant to Florida Statute §768.28 and more than six months has elapsed since notice was given to the Defendant.

73. Defendant City is vicariously liable for the negligent acts committed by his agents/employees, that occur within the scope of their employment.

74. At all times material hereto, Defendant City was vicariously liable for the acts and/or omissions of Defendant Padgett.

75. Defendant Padgett at all times material hereto was an agent/employee of Defendant City.

76. That on May 22, 2022, as an agent/employee of Defendant City, owed a duty to Plaintiff, to act with reasonable care, while attempting to detain Plaintiff Alexis for a Baker Act.

77. Further, Padgett owed a duty to Plaintiff to not carry out Baker Act functions while not in his jurisdiction.

78. That Defendant Padgett, as an agent/employee of Defendant City, breached its duty owed to Plaintiff, in that, in the course of his employment, while outside his jurisdiction attempting to perform Baker Act functions, negligently performed those Baker Act functions by tasing and firing a firearm at Plaintiff Alexis.

79. As a result of Defendant Padgett's breach of duty, the Plaintiff suffered damages as mentioned below in the "PRAYERS FOR RELIEF" section.

80. Defendant Padgett's breach of duty mentioned in the above paragraphs was the proximate and actual contributory cause of Plaintiff Alex's damages; or was solely the proximate and actual cause of Plaintiff's damages.

## COUNT VII. Intentional Infliction of Emotional Distress
### (*Kimberly Seay v. Covelle Padgett*)

81. Plaintiff realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

82. Defendant Padgett engaged in extreme and outrageous conduct by tasing and shooting a firearm at Plaintiff Alexis while he was experiencing a mental health crisis.

83. The acts mentioned above were all viewed by Plaintiff Alexis's mother, Kimberly Seay, who was present on the scene.

84. On December 18, 2025, Defendant Padgett pleaded guilty to the conduct of tasing and shooting a firearm at Plaintiff Alexis.

85. Defendant Pagett engaged in this conduct with the specific intent to cause emotional distress to Plaintiff Alexis and his mother Plaintiff Seay who was nearby observing these actions happening upon her son.

86. As a proximate result of Defendant Covelle Padgett's unlawful conduct, Plaintiff Seay has suffered emotional distress, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of Defendant Covelle Padgett's unlawful conduct, Plaintiff Seay has incurred special damages and may continue to incur other special damage-related expenses, in amounts to be established at trial.

**COUNT VIII. Negligent Infliction of Emotional Distress Fla. Stat. §768.28 – Alternative claim Pursuant to Rule 8 of Fed. R. Civ. P.**
(*Kimberly Seay v. City of West Palm Beach*)

87. Plaintiff realleges paragraphs 1–28 as if fully stated herein.

88. Notice has been given to the appropriate parties pursuant to Florida Statute §768.28 and more than six months has elapsed since notice was given to the Defendant.

89. Defendant City is vicariously liable for the negligent acts committed by their agents/employees, that occur within the scope of their employment.

90. At all times material hereto, Defendant City was vicariously liable for the acts and/or omissions of Defendant Padgett.

91. Defendant Padgett was material hereto, an agent/employee of Defendant City.

92. Defendant City owed a duty to Plaintiff, to act with reasonable care, while attempting to detain Plaintiff Alexis for a Baker Act.

93. That Defendant Padgett, as an agent/employee of Defendant City, breached its duty owed to Plaintiff, in that, in the course of his employment, while outside his jurisdiction attempting to perform Baker Act functions, negligently performed those Baker Act functions by tasing and firing a firearm at Plaintiff Alexis.

94. It was reasonably foreseeable that such actions would result in severe emotional harm to Plaintiff Seay, the mother of Plaintiff Alexis.

95. Plaintiff Seay did not merely learn of the incident but personally viewed the actions as it carried out.

96. As a direct and proximate result of Defendant City's negligence, Plaintiff Seay has suffered extreme emotional distress and mental anguish.

97. Further the Plaintiff's emotional distress manifested to physical issues with her body.

### PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiffs prays that this Court enter judgment for the Plaintiffs and against each of the Defendants and grant:

A. compensatory and consequential damages, including damages, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against all Defendants and in an amount to be determined at trial;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate; and,

G. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues triable by jury.

Respectfully Submitted,

    NWAHIRI LAW, PLLC

    s/ TOBECHUKU TONY NWAHIRI

    _____
    TOBECHUKU TONY NWAHIRI
    Florida Bar No. 112107
    Attorney for the Plaintiff
    Tobe@NwahiriLaw.com
    13499 Biscayne Boulevard, Suite 107, Miami, FL 33181
    P: 305-345-4117 F: 305-503-4614